et al. I understand that for the SEC we have Ms. Parisi, there you are, and that the Appalese are going to distribute their time equally, five minutes apiece. Could I just get, let me make sure I have the order of the Appalese in which you will appear. I have Thomas Dupree. Yes. And then Sarah Levine. Yes. And then, and then Shenmugam. Both behind the computer monitor number three. Okay, great. And Ms. Parisi, I understand you would like to reserve three minutes for rebuttal, is that right? That's correct, Your Honor. Okay, please proceed. May it please the Court, Emily True Parisi for the United States Securities and Exchange Commission. The District Court in this case dismissed the Commission's claims against Rio Tinto and its former CEO and CFO under Section 10b and Rule 10b-5 A and C and Section 17a-1 and 3 without ever considering whether the actions alleged in the complaint actually fall within the language of those anti-fraud provisions. Instead, the Court applied an atextual requirement that liability under those provisions requires more than misstatements or omissions and dismissed the claims solely on the basis of that legal conclusion, which is based on the incorrect premise that the provisions are mutually, that the provisions in those statutes are mutually exclusive and cannot overlap. This was error. The District Court's approach is inconsistent with the text of the anti-fraud provisions and the recent Supreme Court decision in Lorenzo interpreting those provisions. So can I just ask at the risk of oversimplification, are you suggesting simply that Lorenzo overrides the language, in our opinion, in Lentel that would seem to suggest or that the District Court relied upon? Lentel was in the PSLRA context and generally it treats loss causation, but to the extent it has been interpreted to require something beyond misstatements or omissions for the A and C claims under 10b-5 and the related claims under 17a, then yes. I know it talked about loss causation for a long time, but then it seemed to turn to another issue, and I guess I'm looking at the very, is it the very, maybe the last paragraph of the whole opinion. It says sort of finally, and then it says, we hold that where the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out-of-market manipulation claim, et cetera. Is that where we're looking at, or am I looking at the wrong paragraph? Yes, Your Honor. I believe you're in the right place. And again, that was a private plaintiff, and the concern there was getting around the pleading requirements for private plaintiffs. The Commission stands in a different posture, but I agree with that. I understand that argument, but putting aside the SEC is a different argument. Right. To the extent it has been read to apply in Commission cases to suggest that there needs to be something beyond misstatements or omissions for 10b-5 A and C, our position is that Lorenzo has overruled that or has abrogated that. Except that in Lorenzo there was something beyond the statement. It was a dissemination by an individual who wasn't the maker. He knew that the statement was untrue, and he went out and disseminated the statement. And the court focused very clearly on the dissemination. So it concerned his statement, but his conduct was in dissemination. You are correct, Your Honor, that Lorenzo involved dissemination. Are you saying to me that if Mr. Lorenzo himself had made the statement, he still could be liable under A or C? If Mr. Lorenzo had made the statement, he could have been liable under all three sections, yes. Under what? All three subsections, correct. Because that's not what Lorenzo was about, was it? No. I mean, constitutional litigation is common law in the constitutional context. You can't give it more cloth than the tailor gave it. I think the reason that we know Lorenzo stands for the proposition the Commission is advancing is a couple of reasons, Your Honor. It granted review to resolve the question of, quote, whether someone not a maker can nevertheless be liable when the only conduct involved concerns a misstatement. And it set up a circuit split between the D.C. Circuit's decision in Lorenzo and the Ninth Circuit's decision in WPP Luxembourg. And WPP Luxembourg had the rule in WPP Luxembourg was the beyond misstatements rules, indistinguishable from Lentel, as we've been discussing. This is what I find so curious about this case, because there are acts that occurred at various times, the Brisbane meeting and not allowing the auditor or the controller to come to one of the meetings where the controller would learn of the information about the change and put the perspective change with regard to the valuation of the asset. The control of the information with regard to when an impairment does or does not occur. You don't tie your star to that. You tie your star to the statement side of all this. Is that right? Am I being crystal clear that you're relating to all the statements that are made or the fact that information is withheld that then creates a statement that misstates a material fact, right? I mean, we certainly believe that you could describe the conduct here as conduct beyond misstatements and omissions, but that's not the mode of analysis that the district court did. Well, you moved to reconsider, and you're here on an interlocutory appeal that we accepted because you, I'm not, it's your motion. I apologize. I won't point. My question is, what can we think about? Because this is a motion to reconsider, and your motion to reconsider said Lorenzo says statements can be A or C liability, right? And that's the question you want us to answer. Is that correct? Yes, Your Honor. Statements alone, not other conduct that might be reflective of some form of scheme or device to make a false statement. Well, to be clear, Your Honor, it's not that misstatements, merely being involved in a misstatement, automatically makes you liable under A and C in every circumstance. That is not our position. Our position is simply that what the district court here did in terms of short-circuiting, the district court just sort of looked at the allegation and said, all I see are misstatements and omissions. I'm going to say you have to bring those under 10b-5b and 17a-2 or not at all. And we believe that has been overruled by Lorenzo because that was the same exact rule that was in WPP Luxembourg, and the Supreme Court in Lorenzo was very clear that it was abrogating WPP Luxembourg. So you're not saying, to be clear, and I'm not trying to trick you. I'm just trying to understand this. What you're not saying is that there's some form of scheme to be found between Mr. Albanese and Mr. Elliott to manufacture misstatements, that that's somehow a separate conduct that falls under A or C. I mean, I think this sort of goes to Your Honor's question about the unworkability of the other side's position because it's very hard to parse out what it means to be beyond a misstatement or omission. What does it mean? There's no basis in Lorenzo or the text of the provisions to engage in that inquiry, and I think the memetics case that we Well, your complaint makes out claims that, for example, that the 2011 annual report didn't reflect the fact that Mr. Elliott and Mr. Albanese were aware of the fact that there were significant problems with some of the assumptions that they made with regard to the value of the coal mine, right? Right. The allegations in the complaint, as we've put it, is that the individual defendants knew of massive problems from the acquisition and that they orchestrated a scheme to conceal those problems from the auditors and the audit committee so that the financial statements that would be disseminated to the public and incorporated in the bond offering would be materially misleading. So is your theory, then, that there's a scheme to make a misleading statement? The scheme was always to have the financials materially mislead. The scheme was to have the financials reflect the false valuation, right? They learned at the Brisbane meeting, this thing is worth, best case scenario, negative $680 million. And what do they do after that? They say, don't spend any more money on this. They decide at the Brisbane meeting, this is in the complaint, that it's premature to make a valuation. It's premature to value. And then they spend the next few weeks of the impairment process concealing what they just learned from the Brisbane meeting from the auditors and the audit committee who weren't there, who didn't know. I'm familiar. I've spent a lot of time with these facts. Well, I've spent a lot of time with these facts, as I'm sure my colleagues have. But your argument below was, as Lorenzo says, that the statements alone can have scheme liability. Not that not inviting the auditor to the meeting and suppressing information over a period of time results in a scheme to make an ultimate misrepresentation to the public, either in an annual report or later misstatements that then are actionable under 10b-5b. What you argued to the district court and you opened, your very first thing you said, I was listening very carefully to you, you said, the statements alone. That's why I asked you very carefully. I mean, the complaint looks different than your argument. I think that the point is we have argued, you know, the full breadth of the conduct falls under A and C. The district court interpreted that as misstatements alone. But we said even if you think you can characterize all of the conduct as somehow touching on or involving or being about misstatements or leading to misstatements or omissions, what Lorenzo says is that doesn't mean it has to be funneled through 10b-5b or 17a too. It can't. But that's the narrow scheme of the case and the argument that is here, and that is whether misstatements alone, if disseminated, can constitute a scheme. I don't understand who could object to a misstatement if you never tell it to anybody or if you don't release it, so it seems to me that misstatements alone can get disseminated, but they don't constitute themselves schemes. Well, Your Honor, I think it's important to look at the text, right? Employing a device, scheme, or artifice to defraud or engaging in an act, practice, or course of business. That's what A and C and the related provisions say. We have cases. We have Janus. We have Lorenzo. We have a lot of cases. That language was helpful once, but now we're working within a web of cases. Many of them are quite confusing, but that's where we are. And what I think, Your Honor, is that those cases, in particular Lorenzo, the most recent one says is you have to go to the text. That's what Lorenzo says. He can't put an artificial, atextual requirement on top of those textual provisions. That's exactly the main teaching of Lorenzo. And if you look at how those have been defined, right, a device, that which is devised, an act, a doing or a thing done, there's no reason that a misstatement cannot fall under those capacious terms or an omission. So, again, there's no textual reason that a misstatement or omission. But did Lorenzo say what you were saying? Or are you simply saying that Lorenzo did not say it? And if you read the wording, it's very, very broad, and it's very, very inclusive, and it sweeps in everything. Lorenzo said that those who do not make statements under 10b-5b may be liable under those other subsections, even where the allegations involve a misstatement. And, again, it overruled WPP Luxembourg, which had this requirement that Lentil has and that some of the other cases cited, which said you need to have something beyond a misstatement. Can you help me on this thing? I mean, making a misstatement to yourself while you're looking in the mirror in the morning doesn't violate anything. So there has to be something beyond the actual misstatement. And that's the bedrock of the securities laws. What is there about your position that would allow a statement, a misstatement, to be made without it constituting a scheme? I think that Lorenzo teaches that it depends on the nature of the involvement with the misstatement. If you are the maker of a misstatement such that you satisfy 10b-5b, you have most likely also satisfied 10b-5a and c. That's what I think you're arguing? Yes. That's like almost all the cases? But I think the important thing is that the converse is not true, Your Honor. Just because if you're the maker and you have satisfied the more stringent requirements in Janus for 10b-5b liability, such that you most likely also satisfy a and c, it doesn't mean that everyone who touches on a misstatement also satisfies a and c liability. Lorenzo points to many categories. Everyone touches on the misstatement and he makes a misstatement. A maker, yes, but we're not talking about makers. In this case, we're talking about someone who has not been found to be a maker but can still be liable under a and c based on their own primary conduct. Can I just ask? I want to try to rephrase what I think your argument is, and maybe you could just correct me if I'm getting it wrong, but I just want to make sure I understand your position in this respect. Maybe not with respect to the SEC. It's a different point. But that under Lentel, we had a rule that, as followed by the district court here, predetermined any consideration of whether you have made out a scheme, liability under a or c, because it's a straight misrepresentation case. And your position is that Lorenzo overrules that and said all those canons of avoiding interpretations of statutes, regulations that would render something superfluous, are out the window because this is designed to be superfluous. That's my word. This is designed to have overlapping categories. And I understand what you would ask for is for us to just send it back to the district court, say there is no such categorical rule that when you have an all misrepresentations case, it's either b or nothing. But we're not called upon, by you at least, if you win, to say yes, it's a good a scheme or yes, it's c. It's just that district court, they're not automatically out of the realm of a and c. And to the extent we suggested that in Lentels, that is foreclosed by Lorenzo or overruled by Lorenzo. Is that a fair characterization of your argument? Yes, Your Honor. That is exactly correct. That is our position. All right. Thank you. That just helps me to frame the issues. I appreciate that. Why don't we move on to your adversaries. We have Mr. Dupree is coming up first. Is that right? And just, again, just so we have the batting order right, remind us who you're representing right now. Thank you, Your Honor. Tommy Dupree on behalf of Rio Tinto. And may it please the court. Thank you. The commission's scheme claims fail because they are based entirely on misrepresentations. This court held in Lorenzo, or excuse me, Lentel, the Supreme Court in Lorenzo, didn't change any aspect of Lentel, that a misstatement only scheme is insufficient to support liability under subsections a and c. I'm going to jump in with a question. I appreciate you're going right to the heart of the matter. In your view, what did the district court hold on reconsideration? It was not clear to me reading the district court's ruling whether it was rejecting what I understand to be the government's categorical rule or whether it was simply saying that based on the facts of this case they still don't have scheme liability. Could you just shed light on what you think the court held? Sure. On reconsideration, I think the court held that its prior conclusion, namely that you can't have scheme liability for a misstatements only scheme, which was driven by this court's decision in Lentel. On reconsideration, the district court said that nothing in Lorenzo requires changing that conclusion. So you just characterized it as a misstatement scheme. So you would agree then that the complaint as presented alleges cooperation between Albany's and Elliot with regard to the manipulation of information and people who were at meetings, this is the SEC side of the argument here, such that ultimately information that was essential to appropriately evaluating the value of the coal mine in Mozambique didn't show up in an annual report, didn't result in an impairment evaluation, didn't show up in a representation for a bond offering, and ultimately didn't show up in a pitch to investors later on. Your Honor, the actions that the SEC alleges form the basis of the alleged scheme liability are entirely misrepresentations or omissions, full stop. And I would direct the court to page 36 of the special appendix. That's where the district court specifically found, and I'm quoting, everything listed is either a misstatement or omission that would form the basis of liability under Rule 10b-5b. And this presupposes the notion that I think we said in Lentel that basically if you fit into B, you can't fit A or C, right? How is that consistent with Lorenzo that says these are not mutually exclusive categories? It seems to me Lentel was based on the principle that maybe I would have thought was right if you have a list of three things so as to not render them superfluous. Each one must have a different and distinct meaning. And it seems to me Lorenzo said, put that out of your mind. This is a different kind of statute. They're meant to substantially overlap. You can fall into multiple categories. It seems to suggest to me, well, you could be B and you might still be A or C. Why is that not the message that Lorenzo sends? Or are you saying that, well, maybe that's the big picture, but we have a more specific holding here. And because they didn't specifically overrule what we said in Lentels, we as a panel are still bound by it, even if there may be tension with Lorenzo's, I don't know, zeitgeist or something. The direct answer, Your Honor, is that there is a profound difference between some overlap and totally subsuming B within A and C. To be sure, Your Honor correctly noted the Supreme Court allowed for some overlap. For example, you could posit a scheme that would include a variety of deceptive acts, some of which might be misstatements. But what the SEC is arguing is for a complete subsuming of subsection B within subsection A and C. And that absolutely cannot be right under Lorenzo. Well, let's say we disagreed, which would probably make you happy. But we partly disagreed with you, too, and said, well, maybe that's right. Maybe everything that qualifies under B isn't necessarily falling under A and C, but there could be overlap. And what we read the district court to have done here is to say, if you fit under B, that's it. It cannot, as a matter of law, fit under A or C. And if we read Lorenzo to say, no, it's fuzzier than that, go back, district court, and think about it again, knowing that you are not automatically out of A and C just by virtue of fitting under B. Or do you think that's true? You think that the rule, even after Lorenzo, is if you fit under B, end of story. Absolutely. I don't think you can possibly read Lorenzo to support scheme liability for misstatement. But Lorenzo fit under B as an aider to better. So he had secondary liability under B, but he also had primary liability under C, didn't he? Well, again, the Supreme Court acknowledged that there could be overlap to that extent with regard to separate offenses. Here, of course, we're talking about the same action, which the SEC, as I understand their position, the same action would subject you to both primary and secondary liability, which we know can't be right. Your Honor is correct that in Lorenzo, they allowed for the possibility that with regard to one action, you could be a primary offender.  But to get back to Judge Nardini's question, the reason why Lorenzo does not upset Lentell in the entire jurisprudence that's cropped up around subsection B is the court specifically said that we assume that Janus will remain persuasive, will remain good law, and will preclude liability in precisely the situation we have here, where an individual did not make the misstatement, was not a disseminator, and did not engage in some other form of fraud beyond misstatements or dissemination. So I think the Supreme Court, Judge Nardini, did speak specifically to this precise scenario. The court also emphasized the importance of construing scheme liability narrowly, depending on, in their words, purpose, precedent, and circumstances. That is this case. The Supreme Court didn't purport to override all of the case law that's come up under subsection B. It didn't purport to render subsection B superfluous and a nullity to drain it of any constraining force. Quite the contrary. The Supreme Court respected the existing precedent, including Janus, including its cases in Stone Ridge and Central Bank, where they respect that distinction between primary and secondary liability, a distinction that is completely blurred by the SEC's approach to scheme liability. There's absolutely nothing in Lorenzo that supports... You wouldn't deny that a scheme can be accomplished by a coordinated series of misrepresentations aimed at creating a mechanism for fraud. Well, first I would say I don't think that's this case. I understand. No, I know, Your Honor. I just wanted to... And that's the justification. I think the question, Your Honor, with respect, I think the question this Court is being asked is precisely the one that the government teed up in their petition... If you wouldn't mind, I really want to hear the answer to Judge Jacobs' question first. I'm sorry, Your Honor, about whether you could have a scheme to commit misrepresentations. Whether you can use a series of misrepresentations and misrepresentations only in order to float a scheme to defraud. Your Honor, I don't... The way Your Honor posited, I think the answer would be no, because the way I understood that is the only actionable items, the only challenged items would be misrepresentations themselves. In other words, if they committed acts above and beyond misstatements or omissions in furtherance of this scheme... I might agree with you, but you do concede that that's an unappealing idea, because that's how you would do, that's how you would accomplish a complex scheme. And I take Your Honor's point, and look, honestly, if the SEC had made different allegations in this case, we might be having a different conversation. But the place to look, and I would direct the Court to pages 74 to 79 of the Joint Appendix, those are the scheme allegations that are in this case. That's what the District Court focused on. That's what the parties have always focused on. And to the point I was making to Judge Wesley, when the government sought interlocutory appeal, they teed this case up as presenting a pure question of law, whether misstatement-only schemes were sustainable. That's how this case came to this Court. When the District Court ruled as it did and said, look, all you guys are alleging are misstatements and omissions, the government didn't protest, they didn't seek reconsideration on that point, they waived it. Again, that was a ruling in the motion to dismiss, which is not even before this Court, an interlocutory appeal. What is the proposition that, according to you, was waived by the government? The proposition that's waived is they're attempting to dispute that this case alleges more than misstatements and omissions for purposes of scheme liability. How did they waive it? The District Court made a finding. They presented a motion for reconsideration to the District Court. But you don't waive something by failing to move for reconsideration of it, do you? Well, the rule on waiver is simply if you have the opportunity to present an argument below and you don't. Really? And you have to present it and then you have to represent it a second time to preserve it? Since when? Well, this is, again, this is not a final judgment. This is an interlocutory appeal. No, I know, but how did they waive? I'm not understanding waiver, that you have to argue it twice to preserve something? That I don't understand. Well, our argument, Your Honor, is simply that after the District Court made that determination and challenged the District Court's ruling on other grounds, namely the legal sufficiency of their A and C claims, they did not take issue with the finding the District Court made that all they were alleging were omissions in this case. But do you have precedent that says you have to move for reconsideration for ruling in the District Court after having argued a point in the District Court? Otherwise, you've waived it thereafter? Your Honor, we're simply relying on the general principle that typically appellate courts would say you couldn't waive it. I know, but go back to my question. Do you have any case law suggesting that is a true proposition of law? Not in the precise posture Your Honor raised it. But the issue before us is the denial of the motion to reconsider. On the motion to reconsider, their reconsideration request was directed only at the statements, not at a claim of scheme. And the motion to certify an interlocutory appeal ruled on by the District Court and accepted by this Court was on the assertion that the statements alone, that's the very first question I asked counsel from the FCC, and she agreed with me, that the statements alone were sufficient to incur A or C liability. Now, because that's why to me this feels like a tight box, because there's a larger record of assertions of cooperation between Albany's and Elliott in terms of who comes to a meeting, who doesn't come to a meeting, who knows about the write-off, who doesn't know about the write-off, who knows about the government approval, who doesn't know about the government approval, and where the information flows to. That sounds like a scheme to me. But the assertion on the motion to reconsider, which I very carefully asked, is that the statements alone, there are five, I think, that those alone are enough to incur A or C liability, and that's what this Court accepted. The fact that the others might be able to argue in an appeal in the final judgment is a different matter. I don't think it's a matter of wavering out here because it's a motion to reconsider. And that's a fair point. And the only other point I would add to that, Judge Russell, is that the District Court threw out a lot of those particular other items that Your Honor articulated. Right. In other words, the motion to dismiss, they threw out the bulk of what the FCC— Yeah, yes. And so I guess my only point, Your Honor, is that although Your Honor articulated that, yes, the complaint, as originally filed, encompassed more conduct than the specific statements at issue here, the District Court rejected as meritless the bulk of what they were alleging. And that may also play into why, when they postured this case for interlocutory appeal, they are focused on a much narrower band of conduct, the statements only. That's the way that this case, the posture, this case came up to this Court on interlocutory appeal. So I understand the point, but they're analytically distinct about whether issues were waived and what is within the scope of the present appeal. Those are two very different concepts. Correct. Very good. Correct. Okay. We kept you up long after your red light. Thank you for your indulgence. We appreciate your help. I appreciate it. We appreciate it. And why don't we turn to Ms. Levine, and why don't you, again, just for the record, state on whose behalf you are appearing today. Thank you, Your Honor. My name is Sarah Levine, and I'm appearing on behalf of Tom Albanese, former CEO of Rio Tinto. And I think, Judge Wesley, where we start is in that tight box. This case was litigated on the premise that it comes forward with only misstatements and omissions, and that was the basis for the scheme of liability requests. And your initial question to the SEC got to the heart of the matter. What is their position? Is any allegation, claim of misstatement or omission itself something that could be a scheme under A and C following Lorenzo? And in the beginning, she did say yes. It's expressed in their brief. You can look at page 3 in their brief. That is the position they take. And that's what's really so extraordinary about the position that they've taken, that A and C completely subsume B. And although we called this out in our briefing, they haven't identified in their reply or otherwise any instance where a claim of misstatement or omission could not, under their theory, be brought as a scheme liability case. And this is what is so— So you are arguing—I'm trying to just understand this. How does that square with Lorenzo, the notion that, well, you know what, B actually is— A and C may have lots of overlap, but B, if you fall squarely within B, then if you don't have B plus, then you can't have overlap with A and C? Well, Your Honor, it gets to the heart of Lorenzo. Lorenzo held that you could have considerable overlap, and that's what the court— And that's what I'm not understanding. How can you have— That's not complete. Well, the facts of Lorenzo is where the court pointed to it. Lorenzo's fraud was involved with a false statement that went to investors. But they held he could be liable under A and C because he had that deceptive conduct. The dissemination, that had not been previously recognized in the courts. And so the way that the SEC goes beyond what the court has said in Lorenzo is to say that any misstatement or omission claim could be brought as a scheme liability claim. But we know also what's the heart of Lorenzo. Lorenzo was extremely focused on Janus, right? The beginning of the majority opinion after quoting the rule goes through a detailed analysis of Janus. And we know that Lorenzo says very clearly Janus is not dead. Janus held that there were particular standards that need to apply to B to make a liability— But isn't that just to say Janus still stands for the proposition what B is? Janus imposed additional previously unknown requirements on how to bring the statement of omission. You need to be a maker in what that meant, that you had to have control and be the ultimate authority. Well, that's because the lower court had said Lorenzo is not responsible because he's not the maker, right? Yes, Your Honor. But under the government's position, Janus would no longer have any meaning. What would be the case of misstatement or omission liability that couldn't be brought as a scheme liability under their position? There is none. You could have a set of coordinated misstatements or something. But you'd say if the only way in which the scheme was affected was through a series of misstatements, right? You could have one court that says, well, it's got to be B or nothing. And another court says, no, no, no. Maybe if you've got a whole lot of misstatements, that's the way it operated. It was pushed into the world. But if they were coordinated enough or something, then you would say, well, maybe a set of— you could envision a set of misrepresentations or omissions that rise to the level of a scheme. Yes, Your Honor. But it would also mean that the government, the SEC, and private plaintiffs could always bring a misstatement claim as a scheme liability. But no, no, no, no, no. That's what I just said. Maybe sometimes you would have a set of allegations that would be large enough and coordinated enough to also be A and C. But that would also suggest that sometimes you couldn't. And isn't that—I think that's the SEC's argument—that it would be up to, I guess in the first instance, the district court and 12B6, whatever, the standards to sort out, is this a set of misrepresentations that falls under A or C? But the very fact that it's a misrepresentation omission case does not wall it off. Because otherwise, you run afoul of what seems to be the larger teaching of Lorenzo, which is that these are not hermetically sealed boxes. And it seems to me that you're saying the reverse. You're saying, well, the SEC would mean every B is also an A and C. But it seems like you're arguing whenever you have a B, it's never an A or C. And I'm saying, isn't there actually a middle ground where, well, you can have a B and maybe it is or maybe it isn't an A or C? It's a harder issue that's going to be more case-specific. So I would agree to the extent, Your Honor, that following Lorenzo, when you have a B allegation, a maker allegation, a court could consider, could that fall under A and C? Would there be a scheme? Is there coordination that could qualify as well? But I do think, with respect, I think the government has taken a position that does seem— Forget about the government position. Maybe they're wrong.  We're reviewing the district court's ruling. And it sounded to me like the district court was taking a very hard line, which is, again, the extreme view that if it falls into B, it can be nothing else. I don't think that we—the only way to reverse is to say, no, it's the other way. If it's a B, it always is everything else. We could reverse and say, no, it depends. Don't have a closed mind about this. Go back and reconsider in light of Lorenzo. Your Honor, part of what I think is confusing and has animated some of the other questions is the assumption that there are allegations in this complaint that seem to go to coordination, a classic scheme of conduct, and that the reconsideration order appears to be, like, very narrowly categorical. Yeah, it seemed to me when I read it— But in fact, what's odd about the case— Well, hang on. What's odd about the case— It seems like it was saying, well, the facts were different. And I thought the point of the SEC's argument is there was a much broader holding in Lorenzo which says these are not hermetically sealed boxes. The district court did not consider that. It only said, well, that's a dissemination case, and you're not a disseminator. I think the missing piece here is that on this record, the district court in the motion to dismiss actually considered the SEC's argument. It was briefed in their opposition to the motion to dismiss, claiming there was conduct, there was action. And the court looked carefully and said, no, actually, the only thing here are misstatements and omissions, and we don't have what would be normal allegations of coordination. I mean, speaking to Judge Wesley, you threw out some of the factual allegations. But what she saw was that we have an allegation that senior leadership were briefed with some bad news, some adverse developments by the business units. And then the business units continued on. They then, with the project, they eventually directly briefed the controllers and the outside auditors, and they then wrote the papers that went to the audit committee. We don't have a single allegation in the complaint, a single allegation that the senior officers, either Mr. Albanese or Mr. Elliott, directed anybody in the business unit to conceal, to hold back, to engage in anything that we would recommend. Well, that goes to sufficiency, but the legal issue is that clearly Lorenzo does say that just because it concerns him as stated, it doesn't mean that someone can't incur liability under A or C for other acts, doesn't it? That's correct. Because that's what Lorenzo did, he disseminated. But the district court had already determined in Special Appendix 36 that there were no other acts that had been pled, and that's what's weird about this case. It's because it's such a weird case. And if you look at the aiding and abetting piece, I think it will clarify. The government actually brought aiding and abetting claims for Section 13A, which is non-fraud claims, against the individual defendants. And 13A said Rio Tinto filed a false filing, the half-year 2012 report, and the CO and CFO must have aided and abetted. And the same scheme allegations, the scheme liability allegations supposedly supported that. In the motion to dismiss, the district court looked at those aiding and abetting claims, and she dismissed them because she said they did not rise to the level of making out the substantial assistance standard because they are so weak. There are missing pieces here. That is part of why when the district court looked at the reconsideration, she knew she had already, based on her dismissals, based on her careful review and her ruling in the motion to dismiss, she had already found they have not alleged what you would have thought. There is not deceptive conduct. There is not cooperation and coordination by the defendants. All that's left, special appendix 36, is actually the statements of omissions. That's what this case is. If one starts hypothetical with a scheme, unquestionably it's a scheme, you can certainly grant that embedded within that scheme there would be statements that would be misrepresentations and that if they stood alone would support B, liability. As that is so, aren't they really part of the scheme? So, Your Honor, if there were allegations of conduct and actions, and then along with that, misstatements, yes, you could understand. Embedded in the scheme, statements made that are false. Yes, but what's odd about this case, what the district court recognized because of the briefing below, is that the government actually had not made those allegations of conduct, deceptive conduct, deceptive action that one would normally think would accompany the government's claims of scheme liability. She ruled, special appendix 36, that the surviving allegations are themselves misstatements and omissions, similar to what Your Honor recognized in Lentel itself, that an attempt to remake what is a misstatement and omission claim, just repackage it as scheme liability, has no currency. If you look at it in reverse, you start out with a scheme. You don't start with a misstatement and say, can we make this a scheme? You start out with a scheme. Surely, within that scheme, there are embedded statements that are misstatements. Your Honor. And that could, if they were isolated, if they were the only statements, if they were the only aspects of the event, would support P liability. Your Honor, respectfully, that would make sense if you had the normal allegations of a scheme of actions and conduct that would support a fraudulent claim. I'm asking you abstractly, just abstractly. The facts of this case are mounted by law. And I don't think we need to master all those facts in Mozambique in order to answer what sounds like a fairly simple question posed to us by the district judge. Your Honor, with respect, in her motion to reconsideration, she does get to the heart of the holding of Lorenzo. And she says expressly that misstatements alone is not what was addressed by Lorenzo. And rather than seeing that as some type of categorical imposition, it actually is correct. Lorenzo did not address a case where there was just misstatements and omissions. As Judge Wesley pointed out out of the gate, the key issue was there was fraudulent conduct there. And to take a step back in terms of what this would mean, as I pointed out, these same allegations, the government sought to support aiding and abetting liability, and those weren't strong enough to make out a substantial assistance claim. Were a court to permit that to go forward, you'd have a situation where the government is saying claims that are too weak to make out aiding and abetting could themselves support A and B scheme liability. How could that possibly make sense? And then we know, of course, there's no implied right of action or express statutory right for private parties to bring aiding and abetting claims under the securities laws. But they can bring scheme liability claims. So to open that door would really open the floodgates in a way that there's no reason to contemplate that Lorenzo anticipated that or wanted that. Thank you very much. And we kept you up long past your time. We thank you for that. And Mr. Shanmugam, would you like to come up in your representing? Thank you, Judge Nardini, Kenneth Shanmugam, and Paul Weiss for Appley, Guy, and Elliot. May it please the court, I'm going to try in my time not to repeat what my friends Mr. Dupree and Ms. Levine have said, but instead in my time I want to address, first, what exactly is before this court, and second, to say just a little bit on the merits of the legal question on which this court granted an elocutory review. So first on the question of what is before this court, I think that the way that I would put it is that it is not so much about waiver as it is about the fact that the SEC has really litigated this case on the premise that the sole basis for the scheme is misstatements or omissions. That was certainly the premise of the district court's determination in its initial order on the motion to dismiss, as Mr. Dupree pointed out, citing page 36 of the special appendix. Yes, she says, she says, in opposition, the SEC lists all of its actions and conduct and ledges defendants took that would form the basis of scheme liability. However, everything enlisted is either a misstatement or omission that would form the basis of liability under 10b-5. That is correct. And to be sure, to the extent that there were additional allegations in the complaint, as my friend Ms. Levine pointed out, the district court addressed those allegations in connection with some of the other claims in the case, found those allegations were insufficient, and then made the observation that you point out, Judge Wesley, in connection with the 10b claim. From that point on, starting with the motion for reconsideration, but leading all the way up through merits briefing in this court, the SEC did not challenge that premise. It accepted that premise and argued that as a legal matter, in light of the Supreme Court's decision in Lorenzo, that even misstatements or omissions are sufficient. And that was, of course, the legal question that the SEC presented in its 1292b petition to this court. And even in the merits briefing, if you take a look at the very first page. So accepting that, accepting that that's the legal proposition that we're debating right now, and it is something of an abstract question about whether if you only allege misstatements and omissions, you can only be liable under b, and if you're liable under b, you can't be liable under a or c. Why is that not undercut by Lorenzo, which said, no, no, no, these are fuzzy categories? Sure. So Judge Nardini, I want to explain why our position is consistent both with the holding and with, as you referred to it, the zeitgeist of Lorenzo. And I think it's really, frankly, the zeitgeist that the commission is relying on, and I want to come directly to that. I want to make just one parenthetical point before I do, though, which is that I think, frankly, the commission's attempt to limit Lentell to the private plaintiff context is invalid, and if you take a look at the paragraph that you were citing from Lentell, and that's the very last paragraph of analysis in the opinion at the bottom of page 177 of the Federal Reporter, to the extent that this Court reached a holding in Lentell, the holding, and it was framed as a holding, was that where the sole basis for such claims is alleged misrepresentations or omissions. Plaintiffs have not made out a market manipulation claim under subsections A and C and remain subject to the heightened pleading requirements of the PSLRA. The last part of that sentence is obviously the consequence when you have a case involving a private plaintiff, but the holding, by its terms, construes the subsections of Rule 10b-5, and obviously those subsections apply with equal force. Which then raises the question that if Lentell holds, as you suggest, in any other circumstance, this would be pretty straightforward. We're bound by Lentell, case closed, but the question is, to what extent does Lorenzo, and it's not just a question of undermine our opinion because undermining our opinion I don't think does anything for a panel of three, but to what extent does it, I suppose, implicitly or explicitly overrule it? Correct, and our fundamental submission is that Lorenzo did not abrogate Lentell, and let me explain why. So we are certainly not here saying that simply because subsection B is implicated, you can't proceed under subsections A and C, because after all, that was in a very real sense the fact pattern of Lorenzo itself. In a case involving dissemination, you could potentially be liable, at least as a secondary violator, in an action by the Commission under subsection B, and the Court nevertheless said, in the language to which you point, Judge Nardini, that some degree of overlap between these provisions is contemplated. We have no issue with that. Our submission is simply, as Mr. Dupree suggested, that if you accept the Commission's position, in a case where, again, the sole basis for the scheme is misrepresentations or omissions, and I want to come to Judge Jacobs' hypothetical in a minute, but assuming that that is the premise here, the problem with the Commission's position is that we would be going from some overlap to complete overlap. In other words, there would be no circumstance in which a party would be precluded from proceeding under A or C because of the possibility of proceeding under B. Why is that? Why can't you have such an extensive web of misstatements that clearly would constitute a scheme, in the sense that it's clear that they all interact in a certain way, that one can then extrapolate, whether it's an intent to coordinate. Perhaps you don't have any meetings or anything, but you could infer. I mean, I'm looking at, you know, comparing it to a 1343, a 1341 mail fraud, a wire fraud case, where you have people who basically go around and lie. Now, I suppose they also take people's money, but assume they don't take their money, right? And you can have a 1341 or a 1343 that's an attempt, and all they do is they go around and say, I have the most marvelous bridge, and it extends from one borough of New York to the other, and I'd like you to send me your money, and on and on and on. It's an attempt. Let's say there's nothing other than the lies. We would call it a scheme to defraud. So I know you have some experience with those sorts of cases from your prior life, Judge Nardini. Not as a participant in the scheme. Well, thankfully not, but I suspect you may have charged some cases of that type. Now, let me go directly to Judge Jacobs' hypothetical, because I think in a case where you have a series of misrepresentations, it's very likely that you are going to have some additional conduct, such as dissemination. And I think that to the extent that you — Yeah, but that's a fact question, right? It is. Take away that assumption. Take away that assumption. Yes. All right. So let's take away that assumption. I think that where — if all that you have is a series of misrepresentations and, of course, an intent to defraud, because that is an essential element regardless of which subsection you're proceeding under, our submission is that you would have to proceed under B. And that goes to why — Forgive me, but — and, you know, this is a tough thing. You could tell all of us just trying to start with this. If Lorenzo's boss had been the person in the case, he's the maker, right? And he gets Lorenzo to distribute. Is the boss liable under B and C because the boss participated in the scheme to distribute? I don't think so in that hypothetical. Why? If all that he did was to make the misstatement. Well, he directed Lorenzo to distribute it, knowing that Lorenzo himself knew that it was false and that people were going to rely upon it. So Lorenzo was his instrument of distribution. I think at that point where you have someone who is both the maker and who directs the dissemination, and I think this is the Carter case and there may be other district court cases involving that sort of fact pattern, but at a minimum where you direct the dissemination, that is an act. That is a Lorenzo-like act. I mean, that's a plus. It's sort of a plus. Correct. But how is that true? Because, I mean, principal liability, and maybe I'm just running too much on criminal law here, is when you cause an act, you are responsible as a principal for the act. It's not viewed as a plus, right? Right, which is just to say that you're responsible for the act itself. Yeah, I'm in vigorous agreement with that. So how is it a plus? Well, it's additional liability because you've agreed to a scheme to distribute it. Correct. In other words, if you direct the dissemination, it's no different from your being the disseminator yourself. Right. So if you both are making a disseminate, then you have a scheme. But let me explain why. Oh, I see. You're saying because you have two people involved as a scheme. No, because you have one person doing both of those things, at least in Judge Wesley's hypothetical. But let me explain why this makes sense as a matter of recommending. No, no. We misunderstood each other. I just added Lorenzo's boss into Lorenzo's case. Right. Lorenzo's still distributing it, but the boss is directing him to do it. The boss is clearly the maker. That was the problem for the SEC at the circuit court, right, because Lorenzo's not a maker under existing laws. Lorenzo was just a disseminator. My point was simply that if you have somebody who does both, who both makes a misstatement and directs others to disseminate, then you potentially have a scheme because the boss has engaged in additional conduct. That makes sense. Now, let me just say a word about— What's the additional conduct? Would be directing someone else to disseminate in addition to making the misstatement themselves. Okay. And let me explain why that's significant, Judge Nardini. In a corporate environment, you know perfectly—I mean, if you make a misstatement in a press release, you're naturally going—unless the CEO is handling the fax machine, you're going to direct somebody to send it out. So you've just moved all of these things together so that there's no dividing. Well, and I'm going to recognize that there are close cases in this regard, but in our view, the distinguishing factor is the existence of, in the words of the Supreme Court in Lorenzo itself, some other form of fraud, whether that's an act of dissemination or directing dissemination or something else. Now, let me explain because I've been trying to get to this. Well, a scheme requires a shared intent, so an innocent distributor doesn't get caught up in it. That is correct. And there can't be a scheme without two schemers. I mean, the fact that you ask an innocent person to distribute, that doesn't make you a liable under C. Yeah, you could have an act under subsection C, which is a fraudulent act. But one person can have a scheme. We're not talking about a conspiracy. Right, correct. One person can come up with a scheme, right? Correct. I mean, 1341 and 1343, one person can be the fraudster but cooks up a whole scheme. We don't disagree with any of that, but let me explain why this is the correct interpretation of Lorenzo. It is because in a case where, again, you have nothing other than misstatements or omissions, and again, the SEC's theory here is really an omissions theory, and parenthetically, that's why I suspect they don't want to proceed under B, because this would be a very weak omissions case. And that's all that the court has to decide is that this particular case can't proceed under A or C. And the reason why the court should reach that conclusion is because complete overlap would render irrelevant the limitations on liability under subsection B. Janus truly would be a dead letter. And after all, the majority's assurance in Lorenzo, and the majority in Lorenzo included at least two members of the majority in Janus, the majority's assurance in Lorenzo was, quote, Janus would remain relevant where an individual neither makes nor disseminates, end quote, a misstatement, nor engages in, quote, some other form of fraud. But yet, if you accept prevail here, do we have to accept that proposition that if the SEC is right, every misrepresentation case, every B case is either an A or C? Or can you also prevail if we say, no, that's not true. You can have some pure misrepresentation case that are A or C, but I suppose agree with you that given these facts, it doesn't cross the line into a scheme. Well, we're happy to prevail either way, Judge Nardini, but I would submit that the commission, having been given ample opportunity, has not identified a single case that in its view could not be proceeded with under A or C. And why that matters is particularly in the context of private plaintiffs. Because, of course, remember that private plaintiffs can only pursue primary liability. They cannot pursue secondary liability. And yet, under the commission's interpretation, as applied to this case, a private plaintiff who would otherwise be precluded, for instance, by Janus because you have somebody who doesn't make a misstatement and therefore could be liable only in a secondary way under subsection B, could always proceed under A and C. And what is more, we're talking not just about the body of judge-made law here. We're talking about Congress's own statutes. Because such a private plaintiff could also avoid the heightened pleading requirements that apply to private actions under subsection B under the PSLRA by proceeding under A or C. And I would submit that the Supreme Court was very careful in this opinion in Lorenzo. To be sure, the commission relies primarily on one thing, one thing in the Court's opinion, and that is the fact that the Court, in identifying the circuit conflict that it was resolving, cited a case, the WPP case from the Ninth Circuit, that in fact was a pure omissions case. But when you look at the Court's actual reasoning in the case, the Court time and again focused on the fact that the case involved dissemination. It didn't say that dissemination was the only context that was subject to its rule. As I just pointed out in the language where it discusses Janus, it acknowledges that where you have some other form of fraud, you could also have liability under A or C. But the Court stopped conspicuously short of saying that whenever you have something that falls within the plain terms of A or C, it can be actionable under those provisions, even when it falls in the heartland of B, where it not simply concerns a misstatement, but where the sole basis for the scheme is a misstatement or an omission. So in your view, is the bottom line here that Lorenzo doesn't change Lentel and that we're just bound by Lentel full stop? That is correct. I mean, the only question before this panel is really whether Lorenzo abrogated Lentel. Because, again, I don't think there can be any serious debate about what the actual holding of Lentel was. It was introduced by the words, we hold that. That's ordinarily a holding. It's a clue. It is a pretty significant clue, I would submit, Judge Nardini. And so in that context, I think that this panel is obviously empowered to override a prior holding of another panel only in circumstances where there is an intervening holding by the Supreme Court. And so even if this Court thought that the zeitgeist of Lorenzo might suggest that the Court would reach a different conclusion in this context, our submission is simply that there isn't a lot of footing for that in Lorenzo. And, again, I think it's telling that the Commission relies primarily on this passing citation to the WPP case. And I don't think you can really draw very much of a conclusion out of that because it certainly is true that when the petitioner came to the Supreme Court, the petitioner cited the WPP case, among other cases in the circuit conflict. The Court acknowledged that at the outset of the opinion. But, again, in the Court's actual reasoning in the case, the Court itself expressly acknowledged that in some contexts, quote, purpose, precedent, and circumstance could lead to narrowing the reach of the scheme liability provisions. We do also have an argument, I would note parenthetically, that because this is a case that involves only allegations of inaction, it wouldn't even fall within the square terms of subsections A or C. And that's, you know, just another way of saying that this case presents, as Judge Wesley put it, a very tight box. I don't think that the Court really has to do very much other than say that this case falls within the four corners of Lentel in order to affirm the District Court's order. Thank you very much. We appreciate it. Again, we've kept you long over your time. We've set aside three minutes for rebuttal. We may go a smidge over, but we will try to keep it tight because we have tested all of your patience here today. But thank you all. Thank you, Your Honors. Ms. Tracy, if you want, it's up to you. Thank you. I still have the mask on. Can you hear me better now? Yes, thank you. Just a few points in rebuttal, Your Honors. To Judge Nardini's question about what did the District Court actually hold here, I think it is a little confusing if you look at the reconsideration order, but I think it's clarified by the certification order at JA 421 where it very clearly sets forth that the District Court was applying this narrow, if it involves misstatements, it's got to be under B or nothing at all. So I think that helps clarify. The District Court has never said on these facts it doesn't meet A and C. It's never reached the inaction point that was just mentioned. It's never reached those because it used that shortcut to say, I see misstatements here. It's got to be under B. And so those other parts are simply not before this court. Did you say that's 429? Excuse me, 421, JA 421. Thank you. And then in terms of the point about Lorenzo abrogating Lentel, I don't believe that we're relying just on the zeitgeist of Lorenzo. Lorenzo set up a circuit split, and it said one side was correct and one side was the other, and WPP Luxembourg has Lentels beyond the misstatement rule. They're indistinguishable. They have the same rule. And, in fact, WPP cites Lentel at the specific pages the Supreme Court cites when it says we're abrogating WPP. So it is abrogating Lentel through its abrogation of WPP, and the Ninth Circuit has recognized this abrogation in the alphabet case we cite. So the Ninth Circuit has recognized that Lorenzo abrogates WPP. There is no daylight between WPP and Lentel, as defendants have said. So there's simply no question that Lorenzo abrogates Lentel. And we know that because from the holding and from what I just said, and also from its reasoning. I mean, it is simply not consistent with either the holding or the reasoning of Lorenzo. And there's no reason, you know, the reason we would be so limiting. There's simply nothing unique about dissemination as opposed to other kinds of misconduct. In terms of the waiver point that was brought up, I think it was sort of clarified through the conversation. But just to be clear, I mean, we certainly did not waive the idea. We litigated vociferously that there was conduct beyond misstatements at the motion to dismiss stage. At the reconsideration stage, you know, we understand that, you know, the court's time is precious and we cannot re-argue every single thing. And so we made a focused legal argument about Lorenzo and Lentel. No, so I think where we landed, I think, on that is maybe waiver is an imprecise word, but I think we're all now just talking about what's the scope of the issue that's pending before us on review right now. Right, and I think that is the way you described it, Judge Rendini. It's the narrow question about, you know, to the extent the district court here just saw misstatements and said it's got to be B or not at all. That has been abrogated by Lentel, excuse me, by Lorenzo, and it should be sent back to the district court for a fuller reconsideration under the text of those provisions as Lorenzo says. And finally, I just wanted to touch on Judge Jacob's hypothetical, the sort of set of misrepresentations and the line of misrepresentations. I mean, I think that is this case. The district court has certainly not said that that is not this case. And the idea that, you know, there could be a scheme involving a line of only misrepresentations and because someone is the maker, excuse me, is not the maker, there is a loophole that would mean that they cannot be under A and C. I mean, I think that is, to use Judge Jacob's word, unappealing. And I think that's exactly what the, you know, what Lorenzo was saying, that the securities laws are designed to prevent, right? I mean, Lorenzo says in 10B, Congress intended to root out all manner of fraud in the securities industry, and it gave the commission the tools to accomplish that job. So I think on that understanding, this court should vacate and send it back to the district court to apply the appropriate rule under Lorenzo. Okay. Thank you very much. And again, thank you very much to all counsel. These were extraordinarily helpful arguments, and we're very grateful. We will reserve decision, and I would ask the courtroom deputy to adjourn.